UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| FRED M. LEONARD, JR., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) NO.: 2:14-CV-173 |
| | ) |
| RDLG, LLC, | ) |
| | ) |
| Appellee. | ) |

MEMORANDUM OPINION

The appellant, Fred M. Leonard, Jr. ("Leonard" or "appellant"), appeals an order of the United States Bankruptcy Court for the Eastern District of Tennessee, Greeneville Division ("bankruptcy court") deciding appellee's motion for partial summary judgment and appellant's motion for summary judgment. The appellant also appeals the bankruptcy court's order granting RDLG, LLC's ("RDLG" or "appellee"), motion for voluntary dismissal on the remaining claims after the bankruptcy court's entry of its order deciding the summary judgment motions. This Court entered an Order dismissing the appellant's appeal on March 31, 2015. This Memorandum Opinion explains the reasoning for that ruling.

**I. BACKGROUND**

[1]RDLG owned a multiple acreage development in McDowell County, North Carolina (the "property"). Leonard owned and controlled two companies, RPM Group, LLC and its affiliated brokerage, RPM Group Brokerage, LLC (the LLCs collectively "RPM"). RDLG

---

[1] The factual background is taken from the Complaint filed by RDLG in the United States District Court for the Western District of North Carolina, which is part of this record. Because the Default Judgment was entered, the facts of the Complaint are undisputed. The procedural background is taken from the other documents and filings in the record.

alleged that RPM and its representatives, including Leonard, fraudulently induced RDLG to enter into a Marketing Agreement ("the Agreement") with RPM for RPM to market the property and conduct a Sale Event. RPM and Leonard misrepresented that a Sale Event could produce $72,500.00 average lot sale price; however, Leonard knew that the Sale Event would produce an average lot price of about $30,000.00 to $40,000.00. RPM and Leonard misrepresented the success they could obtain through the Sale Event by referring RDLG to previous sale results which purportedly generated mass lot sales at high average lot sale prices when in fact those sales generated much lower sales volume at much lower prices. Leonard directed RDLG to Dexter Hubbard, a developer of one of those prior lot sales. Hubbard was one of Leonard's associates and could have profited from RPM's Sale Event in this case.

The Marketing Agreement provided that if the Sale Event generated enough proceeds to reimburse the entire advertising budget, RPM would begin to earn commission on any proceeds generated above that amount regardless of the average lot sale price and regardless of whether RDLG lost money from the Sale Event. Thus, even if the Sale Event only generated an average lot sale price of $30,000, RPM would be fully reimbursed for its portion of the advertising budget and could have made hundreds of thousands of dollars in commissions.

RDLG incurred great expense preparing for the Sale Event, which was a complete failure. As a result, on September 17, 2010, RDLG filed suit in the United States District Court for the Western District of North Carolina (the "district court") against Leonard, RPM, and four other individuals. RDLG alleged in the suit that it was damaged by the fraud, sought rescission of the agreement, and asserted claims for fraudulent misrepresentation, negligent misrepresentation, civil conspiracy, and unfair trade practices under North Carolina law.

The defendants filed an answer and an amended answer. They mostly denied the allegations and asserted affirmative defenses. They conducted some discovery and attempted to mediate. After that failed, they conducted more discovery. Then the parties consented to have the United States Magistrate Judge decide the case. The court scheduled trial for October 15, 2012. On September 6, 2012, the court entered a pretrial order. It directed the parties to appear at a pretrial conference on October 3, 2012, and ordered them to comply with certain other requirements. The pretrial order warned that the failure to comply with its directives could result in the imposition of sanctions.

On September 30, 2012, two business days before the scheduled October 3, 2012 pretrial conference, Leonard's and RPM's attorneys, Terri Lankford and Seth Neyhart, filed motions to withdraw as counsel and postpone the pretrial conference "so that Defendants can initiate bankruptcy proceedings." Counsel also stated that they had not communicated with their clients since one month earlier. Lankford represented that she was scheduled to be out of the country on the day of the pretrial conference.

The magistrate judge denied the motions on October 1, 2012, and opined that the motions were designed to delay the trial. Further, the magistrate judge warned Lankford and Neyhart that the failure to appear at the pretrial conference would result in the court finding counsel in contempt. The next day, Lankford filed a declaration, stating that she was already out of the country when she received the court's October 1 order. She further stated that it would be impossible for her to be physically present at the pretrial conference. Lankford stated in a sworn declaration that:

> On September 4, 2012, . . . Defendant Fred Leonard stated that he would be filing bankruptcy personally and on behalf of both corporations.

3

> . . . .
>
> Defendant Leonard then specifically asked me to not inform the Court [of their intent for her to withdraw as counsel] until September 28, 2012, because he and his other attorney's [sic] believed that it would severely prejudice him in the resolution of other legal matters, including but not limited to, the execution of a refinance on Defendant's home, the sale of that home, the negotiation of federal tax liens, the settlement negotiation of another litigation matter, the execution of current and pending business deals, and the resolution of an investment conflict.
>
> . . . . I informed Defendant multiple times during the month of September that I needed to file the Motion to Withdraw and was told that I needed to wait until Defendants' bankruptcy was filed which I was assured would be before the end of the month.

On October 3, 2012, the court held the pretrial conference.[2] Attorney Neyhart appeared on Leonard's and RPM's behalf, but he was completely unprepared. Leonard also attended; however, Lankford did not attend. As a result, counsel for RDLG orally moved for entry of sanctions pursuant to Federal Rule of Civil Procedure 16(f).

On October 5, 2012, the court addressed RDLG's oral motion in an order and stated that the order also addressed Leonard's and RPM's and their counsel's conduct *sua sponte*. The court concluded that Attorney Neyhart had been "wholly unprepared for the pretrial conference and had no knowledge of the case," resulting in the pretrial conference being "largely a waste of time and resources." The court further found that Leonard and RPM had failed to comply with the pretrial order by failing produce an exhibit list and that although the defendants had filed a trial brief and jury instructions, as ordered, both documents had been largely copied from documents filed by RDLG. Based on these deficiencies, as well as Lankford's failure to attend as ordered, the court concluded that sanctions were warranted under Rule 16(f). The court ordered Leonard, Lankford and Neyhart to pay RDLG's attorney fees in preparing for and attending the pretrial

---

[2] RDLG filed stipulations of dismissal against all defendants other than Leonard and the RPM defendants on October 2, 2012, and October 8, 2012.

conference; ordered Leonard and RPM to pay $2,500 each as sanctions pursuant to Rule 16(f)(1)(C) for the conduct of their counsel; ordered Lankford to pay $5,000 pursuant to Rule 16(f)(1)(A) and (C), and ordered Neyhart to pay $2,500 pursuant to Rule 16(f)(1)(B) and (C). The court directed that the sanctions be paid to the Clerk of the Court within five days of the order, on October 10, 2012. Furthermore, the court advised them that the failure to timely comply "will result in the Court striking the answer of Defendants and entering default judgment against Defendants and/or the instigation of contempt proceedings against counsel."

The court also stated in the October 5, 2012 order that sanctions were being imposed pursuant to the inherent power of the court to sanction conduct that constituted an abuse of the judicial process. The court concluded that Leonard and RPM and their counsel had filed the motions to withdraw and to continue the pretrial conference in bad faith and for the purpose of delaying the case, and to prevent the trial from going forward. The court stated, "Such conduct by both Defendants and their counsel constitutes an assault on the integrity of this court" and "made a mockery of the judicial process. Such abuses of the judicial process must be sanctioned in order to protect the integrity of the federal court system." The court again warned Leonard and RPM "that any future dilatory conduct will result in the Court striking their Answers and entering default judgment against them." The court further stated that additional sanctions against attorneys Lankford and Neyhart pursuant to Federal Rule of Civil Procedure 11 may be required, and directed counsel to appear before the court for a hearing on October 11, 2012, to show cause why they should not be further sanctioned under Rule 11. It did not state that Leonard could not attend.

On October 10, 2012, Leonard filed a petition for bankruptcy relief under chapter 7 in the bankruptcy court. He failed to pay the sanctions to the district court despite his Schedule B

5

indicating that he had enough money on hand to pay the sanctions as of the date of the bankruptcy filing. That same day, RDLG filed a suggestion of bankruptcy with the district court, regarding Leonard's personal bankruptcy filing.

On October 11, 2012, the district court conducted the show cause hearing regarding attorneys Lankford and Neyhart. On October 24, 2012, the court entered an order stating that Rule 11 sanctions against attorneys Lankford and Neyhart were not warranted. Still, the court concluded Leonard and RPM should be sanctioned under both Rule 16 and the inherent power of the court. The court referenced its oral ruling that it had apparently made on at the show cause hearing. The court noted Leonard's and RPM's failure to pay the monetary sanctions and its previous warning that such failure would result in a default judgment. It found that Leonard and RMP had "plotted and schemed to delay and undermine the trial in this matter." The court further stated that they had "manipulated counsel into believing that all three Defendants would take bankruptcy in this matter prior to the Pretrial Conference in this case when, in fact, only one Defendant took bankruptcy and did so after the Pretrial Conference and on the eve of trial." The court stated that these defendants had undermined their counsel's ability to prepare for the pretrial conference.

Because of this conduct, the court found Leonard and RPM acted "in bad faith throughout these proceedings to the prejudice of Plaintiff, the judicial process, and the administration of justice." Further, the court stated that "less drastic sanctions would be of no avail in this matter." Therefore, the court directed the Clerk of Court to strike defendants' answer and enter default judgment against Leonard and RPM on the issue of liability. The court stated, "The entry of default judgment is necessary to punish Defendants for their conduct in this case and to deter conduct like this in the future, both from Defendants and others. Finally, the

6

Case 2:14-cv-00173-JRG-DHI   Document 15   Filed 04/06/15   Page 6 of 16   PageID #: 979

Court finds that such a sanction is necessary to protect the public interest in maintaining the integrity of the judicial system and preventing a party to a civil lawsuit from undermining the judicial system and the power of the Court."

The court stayed the issue of damages against Leonard individually pending the termination of his bankruptcy case. However, it entered joint and several judgment against the RPM defendants in the amount of $257,500, based on the parties' stipulated damages agreement.

On January 11, 2013, RDLG initiated an adversary proceeding in the bankruptcy court, seeking damages for its state law claims and determinations of nondischargeability. The Complaint failed to reference the default judgment entered by the district court. The first mention of the default judgment was in RDLG's motion for summary judgment filed on November 27, 2013. RDLG submitted authenticated copies of the pertinent pleadings and judgment along with other filings made in the district court action, including the October 5 and 24, 2012 sanction orders.

RDLG argued in its summary judgment motion that the district court's October 24, 2012 sanction order was not subject to the automatic stay of 11 U.S.C. § 362(a); that Leonard was collaterally estopped from re-litigating the fraud issue decided in the district court action; and that the default judgment established nondischargeability under 11 U.S.C. § 523(a)(2)(A). Leonard argued in his motion that the complaint failed to support a finding of nondischargeability pursuant to sections 523(a)(2)(A), (a)(4) and (a)(6).

The bankruptcy court granted Leonard's motion for summary judgment as to § 523(a)(4) and denied summary judgment as to § 523(a)(6). It granted RDLG's motion for

7

summary judgment as to § 523(a)(2)(A). The bankruptcy court scheduled the remaining issues, nondischargeability pursuant to § 523(a)(6) and damages, for trial.

On April 15, 2014, RDLG filed a motion pursuant to Rule 41(a)(2), requesting voluntary dismissal these remaining claims, and Leonard objected to the motion. On April 23, 2014, the bankruptcy court granted RDLG's motion for voluntary dismissal without prejudice and closed the adversary proceeding. Leonard filed this timely appeal pursuant to 28 U.S.C. § 158(a).

Appellant Leonard raises seven issues on appeal. They include:

>(A) The Bankruptcy Court erred as a matter of law in permitting the Plaintiff/Appellee to dismiss its claim for damages and its claim of nondischargeability under 523(a)(6) – without prejudice.
>
>(B) The Bankruptcy Court erred in granting collateral estoppel effect to a default judgment entered in the Western District of North Carolina as an additional sanction after the defendant filed a voluntary petition under Chapter 7, Title 11 and under the particular facts of this case.
>
>(C) The Bankruptcy Court erred as a matter of law by granting summary judgment to the plaintiff upon it's 11 U.S.C. § 523(a)(2)(A) claim, where the defendant obtained absolutely nothing by virtue of any alleged fraud and where the creditor has not shown any loss proximately caused by fraud.
>
>(D) The Bankruptcy Court erred as a matter of law by not granting summary judgment to the defendant upon the 11 U.S.C. § 523(a)(2)(A) claim where the defendant got absolutely nothing by virtue of any alleged fraud.
>
>(E) The Bankruptcy Court erred as a matter of law in finding that the additional sanctions entered by the United States District Court for the Western District of North Carolina were not stayed by operation of 11 U.S.C. § 362(a) where the additional sanctions were entered after the defendant sought relief under Chapter 7 and where the initial sanctions required the defendant to pay a sum of money?
>
>(F) The Bankruptcy Court erred as a matter of law in not considering the sufficiency of the underlying pleading upon which

8

>   a default judgment was obtained to allege fraud with particularity in applying the judgment rendered on that pleading to declare a debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).
>
>   (G) The Bankruptcy Court erred as a matter of law where the Bankruptcy Court permits a non-bankruptcy court to ascertain the amount of any non-dischargeable debt under § 523(a)(2)(A) in which the bankruptcy courts have exclusive jurisdiction.

[Doc. 9, pgs. 7-8]. The Court will address each issue but not in the same order or with the same organizational framework.

## II. ANALYSIS

### A. District Court's sanction order and automatic stay

The appellant argues that the bankruptcy court erred when it found that the October 24, 2012 sanctions order was not entered in violation of section 362(a)'s automatic stay provision. The bankruptcy court did not err. It correctly relied upon *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012). That case states that the automatic stay does not apply in all cases. *Id.* at 760. The court states that there are statutory and non-statutory exemptions. *Id.* The court then concluded that judicial proceedings for contempt against the debtor, which were imposed for similar conduct to the case at hand, was a non-statutory exception. *Id.* at 761.

Here, the district court did not squarely address the automatic stay and did not use the word "contempt" to describe the sanctions it imposed. The first order is clear that it imposed the monetary sanctions under Federal Rule of Civil Procedure 16(f) and the court's inherent power "to sanction conduct that constitutes an abuse of the judicial process." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 534, 542 (4th Cir. 2002). The first order even warned that if the sanction was not paid, then the court would strike the answer and enter default judgment. When the appellant failed to comply with the court's order, the court entered the second. The second order again cites both Rule 16(f) and the inherent power of the court for imposing sanctions. The bankruptcy

9

court was correct in concluding that the sanctions, as opposed to contempt, were exempted from the automatic stay. The bankruptcy court correctly cited to several cases where other courts have so held.

In addition, the bankruptcy court was correct in holding that section 362(b)(4) applies and allows the entry of a sanctions order by a district court in this type of situation. Both the pecuniary purpose test and the public policy test were met. *See Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 385 (6th Cir. 2001). The district court was clear that the sanctions were entered to punish the appellant for his conduct and to protect the integrity of the court and the judicial process as opposed to adjudicating private rights. The record shows that the appellant sought to undermine the judicial process and delay his trial. It shows he acted in bad faith. He failed to comply with the court's order despite him having the money to pay the sanctions in his possession prior to filing for bankruptcy.

**B. Collateral Estoppel effect of default judgment**

The appellant argues that the bankruptcy court erred in holding the default judgment had collateral estoppel effect. The appellee correctly notes that the appellant only challenges two of the bankruptcy court's findings in this regard. First, the appellant challenges the "actually litigated" element and, second, the "full and fair opportunity to litigate element."

"Congress intended the bankruptcy court to determine the final result of dischargeability [yet this] does not require the bankruptcy court to redetermine all the underlying facts." *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981). "[A] creditor may utilize collateral estoppel to prevent litigation of the dischargeability of a debt after obtaining judgment on claims of fraud in state court." *Bay Area Factors, Inc. v. Calvert*, 105 F.3d 315, 321 (6th Cir. 1997). "[F]ederal courts must apply federal rules of collateral estoppel to default judgments rendered in federal

10

courts." *Id*. In diversity cases, the issue preclusion law of the state in which the federal court sits is to be applied, unless there is a countervailing federal interest. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001). The appellant agrees that the Sixth Circuit standard and the North Carolina standard are very similar. *See Urguhart v. E. Carolina Sch. Of Med.*, 712 S.E.2d 200, 204 (N.C. App. 2011); *see also Santana-Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005). The Sixth Circuit has stated that collateral estoppel applies "when: (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue." *Santana-Albarran*, 393 F.3d at 704.

The bankruptcy court concluded that "federal interests require application of the federal interpretation of 'actually litigated.'" [Doc. 1-20, pg. 23]. Under that standard, fraud issues for collateral estoppel purposes were actually litigated if the appellant substantially participated in the district court litigation prior to the entry of the default judgment. *Monica v. Simpson*, 229 B.R. 419, 423 (Bankr. W.D. Tenn. 1999); *see also Wolstein v. Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997). The appellant challenges whether the bankruptcy court erred in holding that this "actually litigated" standard was met.

The bankruptcy court correctly relied upon *Docteroff* in this case which was substantially similar to the facts at hand. This case fits squarely within *Docteroff*. The appellant here participated to a greater extent than the litigant in *Docteroff*. Here, the appellant engaged several attorneys, filed an answer and amended answer, opposed appellee's motion for attachment successfully, served and responded to discovery requests, failed to submit to notices of

11

depositions, and appeared personally at the pre-trial conference. Based on these actions, the bankruptcy court's conclusion that the appellant substantially participated in the litigation prior to the entry of default judgment was not error.

Next, the appellant challenges the bankruptcy court's conclusion regarding the "full and fair opportunity to litigate" element. "[A] full and fair opportunity to litigate entails . . . the procedure requirements of due process." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 483 n. 24 (1982). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Id*. at 481. "In the end, [the] decision will necessarily rest on the trial court's sense of justice and equity." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334 (1971).

The bankruptcy court's findings and conclusions on this issue are not in error. The district court put the appellant on notice that a failure to pay the monetary sanction would result in the court striking the answer and entering default judgment. Even though the appellant had the amount on hand prior to filing for bankruptcy, he failed to comply with the order. The appellant could have disputed the statements in Lankford's Declaration at the pre-trial conference. The district court did not preclude the appellant from attending the sanctions hearing for his attorneys, which was held after the pre-trial conference. The bankruptcy court's conclusion is not in error.

### C. Nondischargeability pursuant to § 523(a)(2)(A)

The appellant also argues that the bankruptcy court erred in denying discharge pursuant to section 523(a)(2)(A). For this determination, the bankruptcy court relied upon the facts of the district court complaint due to the entry of default judgment and its collateral estoppel effect.

12

"A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Under Sixth Circuit law, a creditor must prove: "(1) the debtor obtained money through a material misrepresentation that, at the time the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *Rembert v. AT&T Universal Card Servs., Inc.*, 141 F.3d 277, 280-81 (6th Cir. 1998).

The appellant argued to the bankruptcy court that the allegations of fraud in the district court complaint were insufficient to establish nondischargeability because the fraud was not pled with particularity. The bankruptcy court correctly held that this argument was irrelevant because of the entry of the default judgment. Further, the bankruptcy court could not decide the sufficiency of that judgment because that was appropriately left to the appellate court of the district court. For dischargeability purposes, it matters that there was a determination that the appellant committed fraud under North Carolina law and that these elements are identical to the requirements for dischargeability under section 523(a)(2)(A), a determination the appellant did not challenge.

The appellant also argued that he never "obtained money through a material misrepresentation." Thus, he argued, the elements of 523(a)(2)(A) are not met. The Sixth Circuit rejected the position that "a debt is nondishchargeable under section 523 (a)(2)(A) only when the creditor proves that the debtor directly and personally received every dollar lost by the creditor." *Brady v. McAllister*, 101 F.3d 1165, 1172 (6th Cir. 1996). A debtor could be liable when he has indirectly obtained a tangible or intangible benefit resulting from his

13

misrepresentation. *Ash v. Hahn*, No. 11-3146, 2012 WL 398267, at *4 (Bankr. N.D. Ohio Feb. 6, 2012). The Sixth Circuit recognized in *Lowry v. Nicodemus*, 497 F.R. 852, 858 (B.A.P. 6th Cir. 2013) that *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998), explained that "as long as the debt in question arises out of the debtor's fraud, false pretenses, or false representation, the debt should be held nondischargeable under § 523(a)(2)(A)." *Id*. at 859. Thus, "any debt" obtained by debtor fraud is excepted from discharge. *Cohen*, 523 U.S. at 218.

Further, the Court agrees with the reasoning in *Kendrick v. Pleasants*, 219 F.3d 372 (4th Cir. 2000), and *McCoun v. Rea*, 245 B.R. 77, 87 (Bankr. N.D. Tex. 2000), upon which the bankruptcy court relied. These cases' facts more closely resemble the instant facts than *Rountree v. Nunnery*, 478 F.3d 215 (4th Cir. 2007), which was cited by the appellant.

It is undisputed that the appellant, through RPM, received $40,000.00 directly from RDLG as a result of appellant's fraudulent acts. The appellant was in direct control of these funds, and he had ownership rights to the money. It does not matter that the appellant ultimately expended these funds on RDLG's behalf. The bankruptcy court did not err.

### D. Voluntary Dismissal

The appellant's arguments on this issue are somewhat confusing. It appears that he argues that the bankruptcy court abused its discretion in dismissing the remaining claims without prejudice because "[t]here is no provision with Rule 41(a)(2) for the voluntary dismissal of claims within an action." The appellant cites cases where the issue was whether to permit a Rule 41(a)(2) dismissal of certain claims while other claims remained for trial. But here, the dismissal was just to remaining claims which in turn left nothing for trial and, thus, necessitated dismissal of the action.

14

The appellant also argues that dismissal without prejudice does not comport with the requirements of Rule 4007(c) which requires that section 523(c) complaints be filed no later than sixty days after the first date for the meeting of creditors. However, the appellant did not raise this issue before the bankruptcy court.

Finally, the appellant argues that the issues of loss have not been determined by the bankruptcy court. The damages issue was stayed in the district court. Thus, the appellant argues that assessment of damages there would result in a non-bankruptcy court fixing the amount of nondischargeable debt as well as a duplication of effort and multiplicity of suits. The appellant mainly relies upon *Snyder v. Devitt*, 126 B.R. 212, 215 (Bankr. D. Md. 1991), or cases relying on *Devitt*, for his argument. That case held that a nondischargeability proceeding is equitable in nature, and a creditor is not entitled to a jury trial to determine the amount of nondischargeable debt. Specifically, the court stated:

> In some cases, a creditor bringing a complaint to determine dischargeability of debt is already the holder of a prepetition money judgment obtained against the debtor in another forum. Because the only function of the bankruptcy court in that scenario is the determination within its equitable jurisdiction of the dischargeability of a debt and not strictly the liquidation of the amount of the debt, *Perry* and *Hooper* hold that the creditor would not be entitled to a trial by jury. However, *Hooper* says in dicta that if both the legal and equitable jurisdiction of the bankruptcy court must be exercised in the situation where the debt which the creditor seeks to have declared nondischargeable must also be reduced to judgment at the same time, then the trial must be bifurcated and the creditor is entitled to a jury trial on the money judgment issue.
>
> . . . .
>
> If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court **may** also render a money judgment in an amount certain without the assistance of a jury. This is true not

15

> merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt.

*Devitt*, 126 B.R. at 215 (emphasis added). The Court finds that the holding in *Devitt*, and cases relying on it, does not show that the bankruptcy court abused its discretion in dismissing the damages claim without prejudice. Here, even if the appellant were correct, it is irrelevant because whatever the damages are determined to be, they are nondischargeable. Those damages will not impact the bankruptcy estate.

## III. Conclusion

For the reasons stated above, the appellant's arguments are not well taken, and the bankruptcy court's decisions are AFFIRMED.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE